IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON SUBSCRIBING TO POLICY NO. SUA FEO 1619-2106, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No.: |
| v. | ) ) ) | |
| PRECISION TITLE COMPANY, | ) ) | *Jury Trial Demanded* |
| Defendants. | ) ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiffs, Certain Underwriters at Lloyd's of London Subscribing to Policy Number SUA FEO 1619-2106 ("Underwriters"), by and through their attorneys, BATESCAREY LLP, and for their Complaint for Declaratory Judgment state as follows:

## NATURE OF ACTION

1. This is an insurance coverage dispute. Underwriters request a declaration of their rights and obligations under a Title Agents, Abstractors and Escrow Agents Professional Liability Insurance Policy, Policy No. SUA FEO 1619-2106 (the "Policy"), issued to Precision Title Company ("Precision"). Attached as **Exhibit 1** is a true and correct copy of the Policy.

2. Specifically, Underwriters seek a declaration that Underwriters have no duty to defend or indemnify Precision under the Policy in connection with a wire transfer made by Precision in reliance on fraudulent communications during a property closing in which Precision served as the closing agent (the "Wire Fraud Incident").

3. Exclusion h. of the Policy, as amended by endorsement, precludes coverage, in relevant part, for any **Claim**[1] against the **Insured** based on or directly or indirectly arising out of or resulting from any **Claim** based on: (1) the forgery of, spoofing of, alteration of, manipulation of or unauthorized access to the **Insured's** electronic communications, electronic communication system, website, mobile device, computer system, electronic data, electronic data processing system, or electronic data storage system; (2) the transferring, sending, or disbursing of escrow funds as a result of fraudulent instructions received by any **Insured** or any party to a transaction; and (3) any **Insured's** alleged failure to warn a third party of any issues, risks or concerns associated with transferring, sending, or disbursing funds by electronic or any other means to either another third party or the **Insured**.

4. However, the FIR Endorsement requires, as a condition of coverage, that the **Insured** must have, prior to transferring any escrow funds, verified the original and any subsequent change instructions for the disbursement of escrow funds by making an answered outbound telephone call to another employee or a legitimate party and confirm the original and/or subsequent changed wire instructions (the "Callback Obligations"). Precision Title failed to satisfy the Callback Obligations of the FIR Endorsement and is therefore not entitled to coverage under either the FIR Endorsement, or any other insuring agreement of the Policy.

## PARTIES

5. Underwriters are members of the following Lloyd's syndicates: Argenta Holdings Limited (Syndicate 2121), Munich Re Syndicate Limited (Syndicate 457), and Hardy Limited (Syndicate 0382). These entities are unincorporated associations authorized to underwrite and insure risks within the Lloyd's of London insurance market, and have their principal places of

---

[1] Terms in bolded font are defined in the Policy.

2

business outside the United States, in London, England. No member of the foregoing syndicates is a citizen of or domiciled in the State of Illinois. As such, there is complete diversity of citizenship between Precision and Underwriters.

6. The sole member of Syndicate 2121 is Hannover Rück SE ("Hannover"), a corporation organized and existing under the laws of Germany with its principal place of business at Karl-Wiechert-Allee 50, 30625 Hannover, Germany. For the purposes of diversity, Hannover is a citizen of Germany.

7. The sole member of Syndicate 457 is Munich Re Capital Limited ("Munich Re"), a corporation organized and existing under the laws of England with its principal place of business at St. Helens 1 Undershaft, London, EC31 8EE, 03266453. For the purposes of diversity, Munich Re is a citizen of the United Kingdom.

8. The sole member and capital provider of Syndicate 0382 is Hardy Underwriting Limited ("Hardy"), a private limited company which is organized and incorporated under the laws of England and Wales with its principal place of business at 20 Fenchurch Street, London, United Kingdom EC3M 3BY. For the purposes of diversity, Hardy is a citizen of the United Kingdom.

9. Markel International Insurance Company Limited ("Markel") also subscribes to the Policy. Markel is a private limited company registered under the Companies Act of 1985 as a company limited by shares, incorporated in, and duly organized and existing by virtue of the laws of, the United Kingdom, and has its principal place of business in the United Kingdom.

10. Precision is an Illinois company with its principal place of business located in Schaumburg, Illinois.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 2201 and 2202, as Underwriters seek a declaration of the parties' rights and obligations under the Policy issued by Underwriters. Jurisdiction is also conferred by 28 U.S.C. § 1332(a), as complete diversity exists between the parties and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

12. Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391(b)(1), in that defendant Precision Title Company is a resident within this District.

## THE WIRE FRAUD INCIDENT

13. This incident arises out of a property closing scheduled for late March 2022 in which Precision Title was involved.

14. On March 21, 2022, the seller's attorney forwarded initial wire payoff instructions to Precision Title, which Precision Title confirmed by phone.

15. On March 28, 2022, Precision Title received a separate email purporting to be from the seller's attorney providing revised instructions to wire the funds to a separate account at Wells Fargo.

16. Upon information and belief, the revised wire instructions were sent by a fraudulent actor, not a party to the transaction (or an agent to a party to the transaction).

17. The email was identical to that of the seller's attorney, and there were no other disparities.

18. Precision Title did not call to confirm the updated instructions, and on March 30, 2022, Precision Title wired approximately $139,996.18 to the fraudster's account.

19. On April 20, 2022, the seller emailed his attorney, copying Precision Title, expressing frustration and threatening to file a lawsuit if the matter is not resolved.

20. Upon information and belief, Precision Title has resolved the outstanding payment with its own funds and there are no current demands against Precision Title

## THE POLICY

21. Underwriters issued a Title Agents, Abstractors and Escrow Agents Professional Liability Insurance Policy, Policy No. SUA FEO 1619-2106 (the "Policy"), to Precision Title for the "Policy Period" of September 21, 2021 to September 21, 2022. The Policy contains limits of liability of $1,000,000 per **Claim** and $2,000,000 in the aggregate, subject to a $10,000 per **Claim** deductible. The limit of liability shall be reduced and may be exhausted by amounts incurred as **Claims Expenses**, and **Claims Expenses** shall be applied to the deductible. A true and accurate copy the Policy is attached hereto as Exhibit A.

22. Section I.1.a. of the Policy defines the scope of coverage as follows:

   1. Insuring Agreement

      a. We shall pay on behalf of an "**Insured**" those sums in excess of the deductible that the "**Insured**" becomes legally obligated to pay as "**Damages**" and "**Claims Expenses**" as a result of a "**Claim**" first made against the "**Insured**" and reported to us in writing during the "**Policy Period**" or "**Extended Reporting Period**" by reason of a "**Wrongful Act**" in the performance or failure to perform "**Professional Services**" by the "**Insured**" or by any other person or entity or whom the "**Insured**" is legally liable. The "**Wrongful Acts**" must have been committed on or subsequent to the "**Retroactive Date**" specified in the Declarations and before the end of the "**Policy Period**."

23. Section II. of the Policy, entitled "Definitions," contains the following definitions:

B. "**Claim**" means a written demand for monetary damages arising out of resulting from the performance or failure to perform "Professional Services".

C. "**Claims Expenses**" means:

(1) attorneys' fees, expert witness fees and other reasonable fees and costs incurred by you with our prior written consent, in the investigation and defense of covered "**Claims**";

(2) reasonable and necessary fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a "**Claim**", including the cost of appeal bonds, however, we shall not be obligated to apply for or furnish appeal bonds on your behalf.

"**Claims Expenses**" does not include wages or salaries or costs associated with employees or officials of the "**Named Insured**".

All "**Claims Expenses**" are part of and subject to the Limit of Liability and Deductible and should not be considered sums payable in addition thereto.

D. "**Damages**" means any compensatory amount which you become legally obligated to pay as a result of a covered "**Claim**", including judgments, awards and settlements.

"**Damages**" shall not include:

(1) civil or criminal fines, penalties, sanctions, whether pursuant to law, statute, regulation or court rule;

(2) punitive and exemplary damages and the multiplied portion of multiplied damages;

(3) any matter, sum or award that is uninsurable under any applicable law; or

(4) the cost to comply with or defend against an injunction or other non-monetary or declaratory relief.

\* \* \*

I. "**Professional Services**" means only those services performed by any "**Insured**" for others for a fee in any of the following categories:

(1) Title Insurance Agent,
(2) Title Abstractor,
(3) Title Searcher,
(4) Escrow Agent,
(5) Closing Agent,
(6) Notary Public,

6

      (7)    Public Records Searcher (including UCC searches)
      (8)    Corporate Document Searcher,
      (9)    Flood Zone Certifications, or
     (10)   Witness Closer.

*    *    *

  O.    "**Wrongful Act**" means any actual or alleged act, error, omission, misstatement, misleading statement, neglect, breach of duty in the performing of or failure to perform "**Professional Services**".

24.    Section III.a. of the Policy provides, in relevant part, that the Policy does not apply to any **Claim** against an **Insured**:

  A.    Based on or directly or indirectly arising out of:

      (1)    A "**Professional Service**" performed and those services that should have been performed or were omitted prior to the effective date of the policy if any "**Insured**" knew or could have reasonably foreseen that the "**Professional Service**" could give rise to a "**Claim**";

25.    Section III.h. of the Policy, as amended by the Amended Exclusion H Endorsement, provides that the Policy does not apply to any **Claim** against an **Insured**:

Based on or directly or indirectly arising out of or resulting from any "**Claim**" based on:

(1)    the forgery of, spoofing of, alteration of, manipulation of or unauthorized access to the "**Insured**'s" electronic communications, electronic communication system, website, mobile device, computer system, electronic data, electronic data processing system, or electronic data storage system,

(2)    the mechanical or electrical malfunction of any business machine, communication device or computer system,

(3)    the failure to encrypt, the failure to protect from interception or the failure to protect from the intrusion the "**Insured**'s" electronic communications, electronic communication system, website, mobile device, computer system, electronic data, electronic data processing system, or electronic data storage system,

(4)    the transferring, sending, or disbursing of escrow funds as a result of fraudulent instructions received by any "**Insured**" or any party to a transaction, or

7

    (5)    any "**Insured's**" alleged failure to warn a third-party of any issues, risks, or concerns associated with transferring, sending, or disbursing funds by electronic or any other means to either another third-party or the "**Insured**".

provided, however, that this exclusion does not preclude coverage that would otherwise be afforded to an "**Insured**" pursuant to the terms and conditions of the **WIRE IN TRANSFER DEFENSE REIMBURSEMENT COVERAGE SUBJECT TO SUBLIMIT** and the **FRAUDULENT INSTRUCTIONS & SUBLIMIT ENDORSEMENT** if applicable.

26.    Section VII.5. of the Policy, entitled "Other Insurance," provides, in relevant part, as follows:

This Policy shall be excess over any other valid and collectible insurance, self-insurance or indemnification available to any "**Insured**", whether such other insurance or indemnification is stated to be primary, contributory, excess, contingent, self-insurance or otherwise, unless such other insurance is written only as specific excess insurance over the Limits of Liability of this Policy.

27.    The Policy also contains an endorsement entitled **FRAUDULENT INSTRUCTIONS RIDER** (the "FIR Endorsement"), which provides that:

    A.    Section I. is amended to include the following Insuring Agreement:

        1.    We shall pay on behalf of an "**Insured**" those sums in excess of the deductible that the "**Insured**" becomes legally obligated to pay as "**Damages**" and "**Claims Expenses**" as a result of a "**Claim**" first made against the "**Insured**" and reported to us in writing during the "**Policy Period**" or "**Extended Reporting Period**" by reason of a "**Wrongful Act**" involving an employee of the "**Insured**" transferring, or causing to be transferred, any escrow funds through use of escrow checks or wires to disburse said funds where the employee acts:

           a.    in good faith; and
           b.    in reliance upon

Fraudulent instructions received by an employee of the "**Insured**" from a third-party purporting to be either another employee of the "**Insured**" or a legitimate party (or agent of a legitimate party) to a transaction involving the "**Insured**" and the transfer of escrow funds by the "**Insured**" or any other party.

For coverage under this Insuring Agreement to apply, the "**Insured**" or an employee of the "**Insured**" must have, prior to

8

transferring, or causing to be transferred, any escrow funds, verified the original and any subsequent change instructions for the disbursement of escrow funds in excess of $5,000 by the "**Insured**" making an answered outbound telephone call to another employee or a legitimate party and confirm the original and/or subsequent changed wire instructions or mailing address and:

    a.    The phone number used to call a legitimate party must be obtained from an independent third party, such as the internet; and

    b.    This conversation, the confirmation of the wire instructions or mailing address, and the method used to obtain the phone number must be documented in the "**Insured**'s" records for each transaction.

*   *   *

D.    Sub-Limits and Deductible:

1. The Limit of Liability for coverage provided under the Insuring Agreement set forth in this Rider is limited to the sum of $250,000,
2. The Deductible Amount for each Claim covered by the Insuring Agreement set forth in this Rider is $10,000,
3. The Aggregate Limit of Liability for all losses under the Insuring Agreement set forth in this Rider is limited to the sum of $250,000,
4. The Limit of Liability and Aggregate Limit of Liability stated above is part of, and not in addition to, the Aggregate Limit of Liability set forth in Item 3. of the Declarations Page of the attached Policy.

## **INSURANCE COVERAGE DISPUTE**

28.    Precision Title seeks insurance coverage from Underwriters under the Policy in connection with the Wire Fraud Incident.

29.    Underwriters dispute that coverage exists for the Wire Fraud Incident under the Policy.

30.    An actual, present, and bona fide controversy exists between Underwriters and Precision Title with respect to whether there is insurance coverage for the Wire Fraud Incident under the Policy.

31. A judicial declaration is necessary to establish the parties' rights and duties, if any, under the Policy.

## COUNT I – DECLARATORY JUDGMENT
### (Amended Exclusion H Endorsement)

32. Underwriters incorporate by reference each and every allegation set forth in the preceding paragraphs 1 through 31 as though set forth fully herein.

33. Section III.h. of the Policy, as amended by the Amended Exclusion H Endorsement provides, in relevant part, that the Policy does not apply to any **Claim** against an **Insured** based on or directly or indirectly arising out of or resulting from any **Claim** based on (1) the forgery of, spoofing of, alteration of, manipulation of or unauthorized access to the **Insured's** electronic communications, electronic communication system, website, mobile device, computer system, electronic data, electronic data processing system, or electronic data storage system; (2) the transferring, sending, or disbursing of escrow funds as a result of fraudulent instructions received by any **Insured** or any party to a transaction; and (3) any **Insured's** alleged failure to warn a third party of any issues, risks or concerns associated with transferring, sending, or disbursing funds by electronic or any other means to either another third party or the **Insured**.

34. The Wire Fraud Incident involved Precision Title's wiring of approximately $139,996.18 to an account based upon fraudulent instructions received by a party purporting to be the seller's attorney.

35. Accordingly, coverage for the Wire Fraud Incident under the Insuring Agreement in Section I.1. of the Policy is excluded under Section III.h. of the Policy, as amended by the Amended Exclusion H Endorsement.

## COUNT II – DECLARATORY JUDGMENT
### (FIR Endorsement)

36. Underwriters incorporate by reference each and every allegation set forth in the preceding paragraphs 1 through 35 as though set forth fully herein.

37. The Policy contains an FIR Endorsement amending the Policy's Insuring Agreement, and providing, in relevant part, that Underwriters will pay on behalf of an **Insured** sums in excess of the deductible that the **Insured** becomes legally obligated to pay as **Damages** and **Claims** expenses by reason of a **Wrongful Act** involving an employee of the **Insured** transferring, or causing to be transferred, any escrow funds through use of wires to disburse said funds where the employee acts in good faith and reliance upon fraudulent instructions received by an employee of the **Insured** from a third party purporting to be a legitimate party (or agent of a legitimate party) to a transaction involving the **Insured** and the transfer of escrow funds by the **Insured**.

38. As a condition precedent to coverage under the FIR Endorsement, the **Insured** or an employee of the **Insured** must have, prior to transferring, or causing to be transferred, any escrow funds, *verified the original and any subsequent change instructions* for the disbursement of escrow funds by the **Insured** by making an answered outbound telephone call to a legitimate party and confirm the original and/or subsequent changed wire instructions.

39. No employee of Precision Title made an answered, outbound telephone call to verify the fraudulent instructions sent by a party purporting to be the seller's agent.

40. Accordingly, there is no coverage under the FIR Endorsement for the Wire Fraud Incident.

11

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, Certain Underwriters at Lloyd's of London Subscribing to Policy Number SUA FEO 1619-2106 , request that this Court enter a judgment in their favor and against Defendant, awarding the following relief:

41. A declaration that Underwriters do not owe coverage to Precision Title in connection with the Wire Fraud Incident under the Policy;

42. For costs of suit incurred herein; and

43. For such other and further relief at law or in equity that the Court deems just and proper.

**RESERVATION OF RIGHTS**

The Policy contains terms, conditions, and exclusions that may be relevant to the Wire Fraud Incident but that are not currently implicated by this declaratory judgment action. Nothing in this Complaint should be construed as a waiver by Underwriters of any coverage defenses at law, in equity, or under the Policy. Underwriters continues to reserve all rights with respect to any claim for coverage made under the Policy where appropriate, and waive none.

**JURY DEMAND**

Underwriters demand a jury trial.

DATED: March 17, 2023     Certain Underwriters at Lloyd's of London
                          Subscribing to Policy Number SUA
                          FEO 1619-2106


                          By:    /s/ Benjamin Beaird
                                One of their Attorneys


                          David L. Koury

                                    Adrian T. Rohrer
                                    Benjamin A. Beaird
                                    BATESCAREY LLP
                                    191 North Wacker, Suite 2400
                                    Chicago, Illinois 60606
                                    Ph.:    312-762-3100
                                    Fax:   312-762-3200
                                    Email: dkoury@batescarey.com
                                    Email: arohrer@batescarey.com
                                    Email: bbeaird@batescarey.com

3029138